## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2018, 9:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Cara Schaefer Wieneke<br>Wieneke Law Office, LLC<br>Brooklyn, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Lee M. Stoy, Jr.<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary L. Sears, Jr.,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | April 19, 2018<br><br>Court of Appeals Case No.<br>61A01-1711-CR-2648<br><br>Appeal from the Parke Circuit Court<br><br>The Honorable Sam A. Swaim, Judge<br><br>Trial Court Cause No.<br>61C01-1611-F1-357 |

**Brown, Judge.**

[1] Gary L. Sears, Jr., appeals his sentence for burglary as a level 1 felony and two counts of criminal confinement as level 3 felonies. Sears raises one issue which is whether his sentence is inappropriate in light of the nature of the offense and his character. We affirm Sears's aggregate sentence but remand with instructions that the trial court attach his habitual offender enhancement to his sentence for burglary as a level 1 felony.

## Facts and Procedural History

[2] On November 9, 2016, Sears and Katrina Cottrell broke into the dwelling of Edgar and Mildred Crooks with the intent to commit theft resulting in serious bodily injury to Edgar, and while armed with a deadly weapon confined the Crooks. Edgar and Mildred, who were ninety years old, were asleep in bed in their house in Parke County and awoke to Sears standing over Edgar holding a metal bar and Cottrell standing over Mildred holding a hatchet. Sears asked Edgar how to open the safe, and Edgar replied that he did not know. Sears struck Edgar's head with the bar which caused Edgar to bleed. Sears tied Mildred's wrists together with duct tape.

[3] Sears and Cottrell ransacked the Crooks' house, raked everything off the shelf in the closet and the nightstand including the lamp, hearing aids, glasses, and phone, pulled the landline phone out of the jack in the wall, dumped the contents of Mildred's sewing box and all of the dresser drawers on the floor, broke the glass in a cabinet and in a coffee table, pulled the thermostat off the wall, punched a hole in a hallway wall, broke one of the lights and the glass

bulb in the bedroom ceiling fan, and took the television, all of the Crooks'
medications, Edgar's billfold and watches, and Mildred's jewelry, purse,
billfold, debit card, and a personal check.[1]  Sears and Cottrell moved the safe to
the garage but could not move it into their vehicle.

[4]  After Sears and Cottrell left the Crooks' house, Edgar and Mildred found a
mobile phone which Sears and Cottrell had not discovered and called 911.
Edgar lost a significant amount of blood and passed out, and was taken by
ambulance to Union Hospital in Terre Haute and later, due to his head injury,
was transferred to Methodist Hospital in Indianapolis.  He suffered a
concussion and received stiches to close the wound on his head.  Sears and
Cottrell later used Mildred's debit card multiple times.

[5]  The State charged Sears as amended with: Count I, burglary resulting in serious
bodily injury to Edgar Crooks as a level 1 felony; Count II, robbery resulting in
serious bodily injury as a level 2 felony; Count III, criminal confinement of
Mildred Crooks while armed with a deadly weapon as a level 3 felony; Count
IV, identity deception as a level 6 felony; Count V, armed robbery as a level 3
felony; and Count VI, criminal confinement of Edgar Crooks while armed with
a deadly weapon as a level 3 felony.  The State also alleged that Sears was an
habitual offender.  Sears and the State entered into an agreement pursuant to

---

[1] The personal check was later recovered, and Mildred testified "[t]hey wrote a check for $1,200.00 or
$12,000.00 and had my name signed at the bottom," and when asked if she recalled which amount was
written on the check, she answered "[t]hey had $1,200.00 one way and $12,000.00 the other way."  State's
Exhibit 4 at 35.

which Sears agreed to plead guilty to Counts I, III, and VI and to admit to being an habitual offender and the State agreed to dismiss the remaining counts and to recommend that the sentences on Counts I, III, and VI be served concurrently. The agreement provided that Sears's maximum possible sentence was sixty years. Sears pled guilty to burglary as a level 1 felony and two counts of criminal confinement as level 3 felonies pursuant to the agreement and admitted to being an habitual offender.

[6] Following a sentencing hearing, the court found the following aggravating circumstances: the harm, injury, loss or damage suffered by the victims was significant and greater than the elements necessary to prove the offense; Sears has a history of delinquent or criminal activity; and he was out on release from pending felony charges. The court found the following mitigating circumstances: Sears's claimed remorse and his plea of guilty. It sentenced him to thirty-eight years for his conviction for burglary as a level 1 felony under Count I and thirteen years for each of his convictions for criminal confinement under Counts III and VI, ordered the sentences under Counts I, III, and VI be served concurrently, sentenced Sears to seventeen years for being an habitual offender, and ordered that the habitual offender sentence be served consecutive to the sentence imposed under Counts I, III, and VI, for an aggregate sentence of fifty-five years.

## Discussion

[7] The issue is whether Sears's aggregate sentence is inappropriate in light of the nature of the offense and his character. Ind. Appellate Rule 7(B) provides that

we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[8] Sears argues that his fully executed fifty-five year sentence is inappropriate in light of the nature of the offense but particularly in light of his character. He acknowledges that he seriously injured Edgar and that the burglary was more egregious than a routine home invasion but argues that the egregiousness was accounted for in the elevation of the burglary to the most serious felony level. He also argues that he repeatedly expressed sincere remorse for his actions, he endured a difficult childhood, he developed a substance addiction and his prior convictions were a result of the addiction, and that he was using methamphetamine when he committed the instant crimes.

[9] The State maintains that Sears has failed to show his sentence is inappropriate. It argues that Sears bashed Edgar over the head with a metal pipe resulting in Edgar sustaining a skull fracture and profuse bleeding, tied up Mildred with duct tape, ransacked the Crooks' home, and took their belongings. It argues that the crimes forced the elderly couple to move out of their home and have caused them anxiety. The State further argues that the trial court considered Sears's remorse and guilty plea in sentencing him and that his guilty plea appeared to be pragmatic. The State also contends that Sears's numerous

encounters with the criminal justice system have not caused him to reform his behavior.

[10] A person who commits a level 1 felony shall be imprisoned for a term of between twenty and forty years with the advisory sentence being thirty years, Ind. Code § 35-50-2-4. A person who commits a level 3 felony shall be imprisoned for a term of between three and sixteen years with the advisory sentence being nine years, Ind. Code § 35-50-2-5. The court shall sentence a person found to be an habitual offender to an additional nonsuspendible term that is between six and twenty years for a person convicted of a level 1 felony, Ind. Code § 35-50-2-8. The court sentenced Sears to concurrent terms of thirty-eight years for burglary as a level 1 felony and thirteen years for his criminal confinement convictions as level 3 felonies, and to an additional seventeen years for being an habitual offender for an aggregate sentence of fifty-five years, consistent with the plea agreement.

[11] Our review of the nature of the offenses reveals that the Crooks awoke to observe Sears and Cottrell standing over them and Sears demanding access to the safe. Sears struck Edgar on the head with a metal bar and tied Mildred's hands using duct tape. Sears and Cottrell ransacked the Crooks' house, broke furniture, attempted to take their safe, and took their television, jewelry, watches, medications, and billfolds as well as a debit card and check. The court admitted evidence at sentencing of Edgar's head injury and bleeding, the damage caused to the Crooks' property, and the impact of the crimes on the Crooks. The Crooks' daughter testified that she was shocked at the amount of

blood congealed on her parents' bed, her parents' home was in shambles, her parents could not face going back to their home because it was in shambles and due to the terror they experienced there, her parents moved in with her for a couple of months and now stay in one of her brother's homes, and she watched her ninety-year-old father deal with the symptoms of a concussion including another trip to the emergency room by ambulance. She testified that her parents are very paranoid about locking all the doors in their home and that her mother still has nightmares and, at age ninety-one, had to start taking an anti-depressant. According to the probable cause affidavit, police were able to identify Sears and Cottrell based on their use of Mildred's debit card at multiple locations and later discovered items taken from the Crooks' residence in their vehicle.

[12] Our review of the character of the offender reveals that Sears pled guilty to Counts I, III, and VI and the State dismissed the remaining counts. According to the presentence investigation report (the "PSI"), Sears's criminal history includes possession of a schedule I, II, III, or IV controlled substance as a juvenile in 2008; burglary as a felony in Illinois in 2012; possession of methamphetamine as a felony in Illinois in 2013; and the unlawful sale of a precursor as a level 6 felony in 2015. The PSI indicates that Sears had pending charges in Clay County, Indiana, for possession of methamphetamine and the unlawful possession of a syringe as level 6 felonies and possession of a controlled substance as a class A misdemeanor. The PSI states that Sears reported that about eighty percent of his friends have been in trouble with the

law, that Sears obtained his GED in 2008 and was unemployed and homeless at the time of his arrest, and that Sears reported he is in poor health, suffers from type 1 diabetes and takes insulin, attempted suicide six or seven years ago, started drinking alcohol when he was twelve years old, started using methamphetamine when he was thirteen years old, was clean for about three years until his relapse, and uses methamphetamine daily when using. It states that Sears attended substance abuse treatment once in Illinois in 2012.

[13] Sears testified that he has used methamphetamine since he was thirteen years old, he considered himself to be addicted to methamphetamine, he was clean for three years but relapsed when he split up with his children's mother, and he was using methamphetamine on the date of the crimes. He also testified his father was an alcoholic. He stated that he could still hear Mildred's screams and see the look on Edgar's face, that the crimes would not have occurred if he had not been in a drug-induced state of mind, that he knows that is no excuse for his heinous crimes and he accepts full responsibility, and that he was sorrowful for the traumatizing effect his actions had on the victims.

[14] The trial court found that the harm, injury, loss or damage suffered by the victims was significant and greater than the elements necessary to prove the offense and noted "[w]hat I'm primarily talking about is not only, for instance, on Count I where the defendants injured during the burglary but the house was ransacked and wrecked unnecessarily just out of meanness, spite. There was no reason to do that." Transcript Volume 2 at 43-44. The court noted Sears's criminal history and pending charge in Clay County as outlined in the PSI and

that the victims were ninety years old at the time of the crimes. The court further stated that it did not find any significant mitigating circumstances and that it thought the Department of Correction could address Sears's health concerns. With respect to his addiction, the court stated "those are things that should have been addressed before something like this occurred and, in fact, the defendant had been provided opportunities for probation before to address those issues." *Id.* at 44. The court noted that Sears's expressed remorse and that "unfortunately for no apparent reason you decided to break into [the Crooks'] home just for some money or items, trinkets, and some of their jewelry and so forth that were important to them, but it just seems unnecessary to have done what you have done. It seems callous and cruel." *Id.* at 45. The court also considered Sears's guilty plea and noted that there was overwhelming evidence of his guilt, that the counts against him could have been run consecutively, and that he was facing significant time and received a benefit by his plea.

[15]    The PSI also indicates that Sears's overall risk assessment score using the Indiana risk assessment system places him in the very high risk to reoffend category. After due consideration, we conclude that Sears has not sustained his burden of establishing that his aggregate sentence is inappropriate in light of the nature of the offense and his character.

[16]    While we affirm Sears's aggregate sentence, we observe that the trial court erroneously entered a separate seventeen-year sentence for the habitual offender finding to be served consecutive to the sentences for his convictions under

Counts I, III, and VI.[2]  An habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence.  *See* Ind. Code § 35-50-2-8.  Rather, an habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony.  *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001).  The trial court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced.  Ind. Code § 35-50-2-8.  We remand with instructions that the trial court vacate the separate sentence on the habitual offender finding and attach the enhancement to Sears's sentence for burglary as a level 1 felony under Count I and amend the sentencing order accordingly.[3]

## Conclusion

For the foregoing reasons, we affirm Sears's aggregate sentence and remand for the trial court to attach the habitual offender enhancement to Sears's sentence for burglary as a level 1 felony.

Affirmed and remanded.

Bailey, J., and Crone, J., concur.

---

[2] The trial court's sentencing order states: "As to the habitual offender finding, the Court sentences the defendant to the Indiana Department of Correction for a period of 17 years.  Said sentence shall be served consecutively to sentence imposed under Counts I, III and VI."  Appellant's Appendix at 66.  Similarly, the chronological case summary indicates, with respect to the habitual offender finding, the following: "Consecutive with Prior Sentence: Counts I, III & VI."  *Id*. at 11.

[3] This will not impact the length of Sears's aggregate sentence of fifty-five years.